## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  08-60179--CR–MARRA/HOPKINS

UNITED STATES OF AMERICA,

        Plaintiff,

v.

EDDIE ROBINSON,

        Defendant.

_____/

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR PRODUCTION OF CONFIDENTIAL INFORMANT'S NAME AND FILE (DE 51) DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE DERIVED FROM JAIL TELEPHONE CALLS (DE 39), DEFENDANT'S MOTION IN LIMINE TO EXCLUDE JAIL TELEPHONE CONVERSATIONS AND TRANSCRIPTS (DE 37), DEFENDANT'S MOTION FOR EARLY JENCKS DISCLOSURE (DE 38), AND DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED PURSUANT TO SEARCH WARRANT (DE 40)

**THIS MATTER** is before the Court on reference from United States District Judge Kenneth A. Marra. (DE 53.) Before the Court is Defendant's Motion for Production of Confidential Informant's Name and File (DE 51), Defendant's Motion to Suppress All Evidence and Fruits Derived from Illegally Intercepted Jail Telephone Calls (DE 39), Defendant's Motion in Limine to Exclude Jail Telephone Conversation and Transcript (DE 37), Defendant's Motion for Early Jencks Disclosure (DE 38), and Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrant (DE 40).  The parties briefed the issues related to the motions.  The Court also held a hearing on Defendant's motion on December 8, 2008.  The parties filed supplemental pleadings on December 11, and 15, 2008. (DEs 62, 65).  Now, having fully considered the parties' arguments and evidence, and considering the governing law, the Court RECOMMENDS that the motions be denied

1

as discussed below.

## **BACKGROUND**

The Court makes the following findings of fact:

On July 8, 2008, the Defendant was indicted on one count of being a felon in possession of a firearm and ammunition, which carries a mandatory minimum sentence of fifteen years to life imprisonment because Defendant allegedly is an armed career criminal.  (DE 1).  The Indictment arises out of a May 14, 2008, search of Defendant's residence by law enforcement officers with the Hollywood Police Department and the Broward Sheriff's Office that revealed a .22 caliber revolver and 9 rounds of ammunition in the Defendant's bedroom.

The affidavit and application for the search warrant, which was issued by a Circuit Court Judge of the 17th Judicial Circuit in and for Broward County, Florida, indicated that information was provided to the affiant by a Confidential Informant (CI) about illegal narcotics activity occurring at Defendant's residence, the subject location of the search warrant, 1841 Rodman Street, Hollywood Florida.  A copy of the Application and Affidavit as well as the Search Warrant was attached to Defendant's Motion to Suppress Evidence (DE 40) as an attachment (DE 40-2).

At the hearing on December 8, 2008, Broward Sheriff's Office Detective Osvaldo Tianga and Hollywood Police Department Detective Andrea Penoyer testified.  An affidavit of  Broward Sheriff's Office Detention Payphone Coordinator Kathleen Casey was admitted into evidence without objection.

The premise for the investigation came from a documented confidential informant who had previously proven to law enforcement to be both trustworthy and reliable.  The Informant had been paid a couple hundred dollars as a tipster.  The Informant was paid after the arrest of Defendant

Robinson (and Shaun McKinley) because drugs were found in the residence.  Had Defendant Robinson cooperated, the Informant might have received more money.  The informant gave information that both Eddie Robinson and Shaun McKinley received, stored and distributed marijuana and both powder and crack cocaine at the residence located at 1841 Rodman Street, Hollywood, Florida.  The informant specifically identified the type of vehicles driven by each Robinson and McKinley.

Detectives confirmed the residential address and vehicle information provided by the Confidential Informant by observations of both vehicles at the search location on a number of occasions and further identified the vehicles as being registered to Robinson and McKinley. Detectives also learned that Eddie Robinson identified 1841 Rodman Street, Hollywood, Florida as his residence on his driver's license.

On April 17, 2008 and April 24, 2008, Detectives recovered and searched garbage bags left at 1841 Rodman Street to be picked up by garbage collectors.  In a particular garbage bag recovered on April 17, 2008, detectives found a piece of aluminum foil containing cocaine residue, two cellophane baggies containing marijuana residue, empty clear bags, and a piece of mail addressed to Shaun McKinley at the search location.  From a particular garbage bag recovered on April 24, 2008, detectives found four partially smoked marijuana cigarettes, a receipt in the name of Eddie Robinson and a piece of mail addressed to Eddie Robinson at the search location.  A field tested conducted on all suspected controlled substances found on both occasions revealed the presence of the particular suspected controlled substance.

Based on a criminal history check of both Shaun McKinley and Eddie Robinson, Detectives learned that each had many arrests relating to cocaine and marijuana possession and/or distribution.

The warrant was executed on May 14, 2008.  After a "knock and announce" which went unanswered, a "flash bang" diversionary device was thrown into the window of Eddie Robinson's bedroom.  Law enforcement officers then went inside the residence through the front door.   The officers had legitimate concerns about safety and disposal of evidence that prompted their entry after their knock and announce went unanswered.

Inside the house were Defendant Eddie Robinson and Gerald Viskocil, another resident of the home.  Law enforcement officers recovered a loaded .22 caliber firearm from Eddie Robinson's bedroom and a shotgun and controlled substances and related paraphernalia from an upstairs bedroom belonging to Shaun McKinley.

Defendant was arrested and transported to the Broward County Main Jail in Fort Lauderdale where he was processed and booked into the jail system.  On that same day, at approximately 12:26 p.m., Defendant made a telephone call from the Broward County Jail to housemate Gerald Viskocil.  The telephone call was recorded by jail officials.   A transcript of the recording at issue was prepared by the Bureau of Alcohol Tobacco Firearms and Explosives (ATF) Special Agent Richard Coes.  The recording is not inaudible, nor are the transcripts faulty or misleading.

During the call which lasted approximately two and a half minutes, Defendant told Viskocil that he was charged with possession of a firearm.  Defendant then explained to Viskocil what he believed his bond would be and requested Viskocil to secure a bondsman.  Viskocil asked Defendant whether Defendant had anything in his room, to which Defendant responded "yeah, I had, it was, it was a gun in there - " The end of Defendant's sentence was interrupted with Viskocil's response "You're an idiot."  Shortly after, Defendant said the following: "Man, I'm just mad about how I got caught on this [expletive] again, man.  Man [expletive].  Well, I know I'm finna [sic] go back.  I'm

4

a try not to go...."

On or about January 4, 2007, the Broward County Jail system began recording outgoing telephone calls made by inmates. Prior to December 22, 2006, a notification of the recording policy was created and distributed for posting in all housing units of the jail facilities from where telephone calls would be made.  On September 17, 2007 the implementation of a "PIN" system went into effect.  The system required an inmate to use his/her pin number which was generated for each individual inmate upon his/her being booked into the jail.  An internal Training Bulletin was generated, prior to, on September 7, 2007 explaining not only the PIN system, but reiterating the Broward Sheriff's Office purpose of recording inmates' outgoing telephone calls.  Along with the bulletin, "Dialing Instructions," which also notified the inmates of the recordings, were posted in all housing units from where inmates could make outgoing telephone calls.

## ANALYSIS

### A.  The Motion For Disclosure of Information Concerning the Confidential Informant (DE 51).

Defendant seeks to have the Confidential Informant's name and file produced, or in the alternative reviewed *in camera* by this Court.  After considering the evidence from the hearing and the parties' submissions, the Court RECOMMENDS that the Defendant's Motion For disclosure of information concerning the CI should be denied.

There is a governmental privilege to withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officials.  *Roviaro v. United States*, 353 U.S. 53, 59, 77 S. Ct. 623, 1 L. Ed. 2d 639 (1957).  According to the Supreme Court, however, a

limitation on the privilege "arises from the fundamental requirements of fairness" and "[w]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." *Id.* at 60-61. The Court further stated:

> [w]e believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstance of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors.

*Id.* at 62. The Eleventh Circuit has noted that, as the law has developed since *Roviaro*, three factors have become the focus of the balancing analysis: "'the extent of the informant's participation in the criminal activity, the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and the government's interest in nondisclosure.'" *United States v. Gutierez*, 931 F.2d 1482, 1490 (11th Cir. 1991) (*quoting United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 (11th Cir. 1985)).

As a first step in the analysis the Court must ascertain if the Government has a valid reason for nondisclosure. *Tenorio-Angel*, 756 F.2d at 1511. Typically, the Government's justification for refusing disclosure is that the CI's physical safety may be endangered by disclosure, or the CI's usefulness as a confidential source, past or future, may be impaired as a result of releasing his or her identity. *Ayala*, 643 F.2d at 247. If the Government's justification for preventing disclosure outweighs the defendant's interests in disclosure, the CI's identity will not be made known.

A defendant is entitled to disclosure under appropriate circumstances, however. For example, where a CI "played an active or prominent role in the criminal activity" a defendant may succeed in obtaining disclosure of the CI's identity. *United States v. McDonald*, 935 F.2d 1212,

1217 (11th Cir. 1991); *United States v. Ayala*, 643 F.2d 244, 246 (5th Cir. Unit A April1981) ("The more active the participation, the greater the need for identification."). Indeed, if a CI is the sole participant with the defendant in the criminal activity, that cuts heavily in favor of disclosure. *See Gutierez*, 931 F.2d at 1490-91 ("Nor is this a case in which the government is required to disclose the informant's identity because the government's informant was the sole participant other than the accused.") (*citing Roviaro*, 353 U.S. at 64-65, 77 S. Ct. at 629-30 (noting that the CI "was the sole participant, other than the accused, in the transaction charged")); *but see Alvarez v. United States*, 525 F.2d 980, 982 n.6 (5th Cir. 1976) (noting that even in *Roviaro*, where the CI played an active role in the criminal conduct, the Court evaluated all of the relevant factors before concluding disclosure was required). Where the informant's participation in the investigation could be described as that of a tipster, that factor by itself will not compel disclosure. *See*, *United States v. Diaz*, 655 F.2d 580, 588 (5th Cir. Unit B 1981)(recognizing that the *Roviaro* principle does not require disclosure of a mere tipster's identity).

The Supreme Court recognized the necessity of disclosure when the informer's communications are  claimed to establish probable cause for a search warrant, "unless there was sufficient evidence apart from his confidential communication." *Roviaro* at 61.

Further, where a defendant proves that "the informant's probable testimony would bear a direct relationship on the defendant's asserted defense" such that it would "significantly aid in establishing . . . [that] . . . asserted defense[,]" a defendant may also succeed in obtaining disclosure. *McDonald*, 935 F.2d at 1217.  It is defendant's burden to show that the confidential informant's testimony would significantly aid in establishing an asserted defense. *See United States v. Terorio-Angel*, 756 F.2d  1505, 1511-12 (11th Cir. 1985),  *United States v. Kerris*, 748 F.2d 610, 614 (11th

Cir. 1984),, *United States v. McDonald*, 935 F.2d 1212, 1217 (11th Cir. 1991).

In this case, the Government justified non-disclosure since disclosure could compromise the integrity of a confidential informant's safety or other investigations in which the confidential informant may be involved.   Indeed this risk is substantial where the investigation involves drugs, guns, and subjects with lengthy, serious criminal histories.   The question is whether the Defendant's need to know the identity of the CI outweighs this risk.   The Court believes under these circumstances that it does not.

The defendant was not a participant in the crime charged, a firearms charge.  The CI was not present during the search of the premises and can offer no commentary on the items discovered at that time.   The Defendant has not shown that the CI's testimony bears a direct and beneficial relationship to any asserted defense to the charged conduct.  *McDonald*, *supra*. There is thus no need shown for his testimony to support an affirmative defense and disclosure is not required on that basis.  *McDonald*, *supra*; *see also United States v. Rutherford*, 175 F.3d 899 (11th Cir. 1999) (noting that an *in camera* hearing to inquire into the CI's testimony was appropriate where the CI was actively involved in the criminal activity and in a better position to identify the defendant, who was claiming misidentification, than police officers who were also present); *Gutierrez*, 931 F.2d at 1490-91 (noting that the CI must be shown to have evidence that "would significantly aid in establishing an asserted defense").

This Court finds that this case is one where the CI's role is more akin to informant or "tipster" in connection with issuance of a search warrant.   In cases involving "tipsters" who are not active and primary participants in the criminal activity with a defendant, the tipster's identify often is not disclosed.  *See, e.g.*, *United States v. Johnson*, 302 F.3d 139 (3rd Cir.. 2002) (holding that the

CI's identity need not be disclosed where he merely introduced the police agent to the defendant but was not present during the drug sales forming the bases for the charges); *United States v. Flaherty*, 295 F.3d 182 (2nd Cir. 2002) (holding that the CI's identity need not be disclosed where the CI introduced the police agent to the defendant and was also present with the police agent at the time the illegal conduct occurred); *Gutierrez*, 931 F.2d at 1490-91 (distinguishing cases involving mere tipsters whose identities need not be disclosed from those where the CI has greater participation and whose identity should be disclosed). In this instance, the CI can provide no testimony regarding the finding of contraband during the course of the search.

In *United States v. Booker*, 131 Fed. Appx. 234 (11th Cir., May 12, 2005) (unpubl. op.), the Eleventh Circuit addressed a somewhat similar situation. In that case, Booker challenged the lower court's refusal to require the CI's disclosure after the CI gave information to the police regarding Booker's alleged criminal activity. After giving the tip, the police arranged for the CI to make a controlled drug buy from Booker. They did not directly listen to or observe it. Based upon the controlled buy and tip, the police obtained a search warrant that, when executed, resulted in further contraband being gathered. Booker was charged with, and convicted of, being both a felon in possession of a firearm and the drug sale. Booker asserted a misidentification defense and moved for disclosure of the CI. The trial court denied the motion.

The appeals court affirmed the lower court's ruling. The panel noted that even accepting that the defendant's misidentification defense would be supported by the CI's testimony, that fact did not warrant disclosure of the CI's identity. *Id.* at 241. First, the defendant had made threats against the CI. *Id.* Second, even if Booker had been misidentified as the seller by the CI, probable cause for searching the residence would not be affected. *Id.* It was during the search that the firearm was

discovered, and whether or not the CI had misidentified Booker as the seller was not related to any of Booker's asserted defenses to knowingly possessing the firearm. *Id.* Therefore, the Court concluded that Booker had failed to show that the CI's testimony "'would significantly aid in establishing an asserted defense.'" *Id.* (*quoting Gutierrez*, 931 F.2d at 1490-91).

Nor is this a case where the CI's communications established probable cause for a search warrant. Rather, "there was sufficient evidence apart from his confidential communication." *Roviaro* at 61. The Government need not disclose the name of an informer, provided that officers came onto sufficient corroborating evidence to constitute probable cause, aside from the informer's disclosures. *Lane v. United States*, 321 F.2d 573, 575 (5 Cir. 1963), *cert. denied*, 377 U.S. 936, 84 S.Ct. 1340, 12 L.Ed.2d 299 (1964).

Indeed, no hearing pursuant to *Franks v. Delaware*, 438 U.S. at 171-72, 98 S.Ct. 2674, is required despite omissions from an affidavit that would cast doubt on the truthfulness of an informant where the informant's statements are corroborated, and probable cause exists nevertheless. *United States v. Nelson*, 450 F.3d 1201, 1214 (10th Cir. 2006) (informant made recorded, controlled buy while under police surveillance); *see also Franks* at 155-56, 171-72; *United States v. Cross*, 928 F.2d 1030, 1041 (11th Cir. 1991).

In the instant case the detectives confirmed the residential address and vehicle information provided by the Confidential Informant by observing both vehicles at the search location on a number of occasions and further identifying the vehicles as being registered to Robinson and McKinley. Detectives also learned that Eddie Robinson identified 1841 Rodman Street, Hollywood, Florida as his residence on his driver's license. On April 17, 2008 and April 24, 2008, Detectives recovered from garbage bags left at 1841 Rodman Street cocaine residue, marijuana residue,

marijuana cigarettes, drug paraphernalia, and mail addressed to Shaun McKinley and Eddie Robinson, and a receipt in the name of Eddie Robinson. Detectives also learned that each had many arrests relating to cocaine and marijuana possession and/or distribution. Even if restricted to such corroborating information, the affidavit demonstrated "a fair probability that contraband or evidence of a crime [would] be found in" Defendant's residence. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). Thus, officers came onto sufficient corroborating evidence to constitute probable cause, aside from the informer's disclosures, and no disclosure of the informant is necessary. *Lane v. United States*, 321 F.2d 573, 575 (5 Cir. 1963), *cert. denied*, 377 U.S. 936, 84 S.Ct. 1340, 12 L.Ed.2d 299 (1964); *United States v. Cross*, 928 F.2d 1030, 1041 (11th Cir. 1991); *United States v. Nelson*, 450 F.3d 1201, 1214 (10th Cir. 2006) .

As stated above, this Court believes that the CI need not be disclosed to the Defendant, because: (1) the CI played no direct role in the criminal conduct charged by the indictment; (2) the CI cannot provide any testimony that will assist the Defendant in defending against the indicted conduct; (3) probable cause for the search warrant existed without the information provided by the CI; and (4) a substantial risk of harm to the CI exists if the CI's identity is disclosed. Accordingly, it is this Court's recommendation that the Government need not disclose the identity of the CI.

**B.  Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrant (DE 40)**

Defendant now seeks to suppress all evidence seized from his residence pursuant to the search warrant, including the .22 caliber firearm and .22 caliber ammunition, a piece of mail addressed to Defendant, and Defendant's Department of Corrections identification card. Defendant's Motion to Suppress challenges the warrant for the following reasons:

1.    the affidavit and application failed to establish probable cause;

2.    information provided by the confidential informant was stale, unreliable, unverified and wholly insufficient as a matter of fact and law;

3.    the confidential informant was not trustworthy and reliable;

4.    the affidavit and application failed to explicitly state the specifics of the intelligence information, but was conclusory, non-specific, ambiguous and vague;

5.    the garbage pick-ups were stale, unreliable and insufficient to establish that a felony had been committed and that the laws relating to narcotics and drug abuse were violated at the premises;

6.    the search warrant was not sufficiently particular, and did not specifically authorize the seizure of the firearm, mail or ammunition;

7.    the application, affidavit and warrant were facially and irremediably defective as it failed to sufficiently describe the things to be seized;

8.    the officers executing the warrant exceeded the scope of the warrant and failed to properly and timely file an inventory and return with the Court;

9.    items were seized in the search but not included in the inventory;

10.   the officers failed to knock and announce their entry prior to entering the premises; and

11.   the affidavit failed to advise the state judge that the confidential informant was a convicted felon with lengthy criminal record, as well as a drug addict and drug abuser while he was providing the information to the Affiants.

For the following reasons, this Court Recommends that the Defendant's motion be denied:

1.      The affidavit and application established probable cause.

As discussed above in section A, the detectives provided sufficient evidence to constitute probable cause, even aside from the informer's disclosures.  *Lane v. United States*, 321 F.2d 573, 575 (5 Cir. 1963), *cert. denied*, 377 U.S. 936, 84 S.Ct. 1340, 12 L.Ed.2d 299 (1964); *United States v. Cross*, 928 F.2d 1030, 1041 (11th Cir. 1991); *United States v. Nelson*, 450 F.3d 1201, 1214 (10th Cir. 2006).

2.      The evidence should not be suppressed due to stale, unreliable, and unverified information provided by the confidential informant.

As discussed above in section A, the evidence should not be suppressed due to unreliable and unverified information provided by the confidential informant.  In addition, the evidence should not be suppressed due to stale information.

In considering staleness, "[i]n addition to the length of time, courts should consider the 'nature of the suspected crime, habits of the accused, habits of the accused, character of the items sought, and nature and function of the premises to be searched.'"  *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000) *quoting United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994).  When the court reviews staleness challenges, there is no talismanic rule that establishes arbitrary time limitations for presenting information to an issuing court, rather each case is reviewed based on the unique facts presented.  *United States v. Harris*, 20 F.3d 445 (11th Cir. 1994).  *See also*, *United States v. Magluta*, 198 F.3d 1265 (11th Cir. 1999) (drug trafficking activities are inherently protracted and continuous); *United States v. Hooshmand*, 931 F2d 725 (11th Cir. 1991) (in Medicare fraud case, information provided by ex-employee who was last employed 11 months earlier was not too stale in light of pervasive nature of the ongoing fraud).  There is no particular time limit for when information

13

becomes stale. *Bervaldi* at 1265.  A determination is made on the particular facts of each case. *Id*. Where the affidavit "recites activity indicating protracted or continuous conduct, time is of less significance." *Id*. (internal quotations omitted).

In *United States v. Fanel Mesalien*, Case Number 08-60066-CR-ALTONAGA (S.D.FL. 2008) (DE 50, Exh. 1), the Court found that a search warrant conducted three weeks after the last surveillance and trash pull did not render the probable cause for the search warrant stale.  In *U.S. v. Roundtree*, 2008 WL 4821665 (11th Cir. 2008), the Eleventh Circuit approved a four day delay before a warrant was obtained and an eight day delay before a warrant was executed where there was evidence of protracted or continuous drug dealing at the location.

In the instant case, the two subjects suspected of being involved in narcotic related activity each had lengthy criminal histories involving the same offenses.  Further, the trash pulls of April 17, 2008 and April 24, 2008 revealed drug paraphernalia and residue of both cocaine and marijuana suggesting an ongoing packaging, storing or distribution pattern.  The search warrant was obtained on May 7, 2008, almost two weeks after the last trash pull, and executed on May 14, 2008, within three weeks of the last trash pull.  Under these circumstances the information was not stale.

3.     The evidence should not be suppressed due to an untrustworthy and unreliable confidential informant.

As discussed above in section A, the evidence should not be suppressed on this basis.

4.     The warrant was sufficiently and particularly detailed.

When evaluating a warrant, it is enough if the description is such that the officer with the search warrant can, with reasonable effort, ascertain and identify the place intended.  *Steele v. United States*, 267 U.S. 498 (1925); *United States v. Weinstein*, 762 F.2d 1522 (11th Cir. 1985).  A

14

description of the property will be acceptable if it is as specific as the circumstances and nature of activity under investigation permit. *United States v. Moody*, 977 F.2d 1425 (11th Cir. 1992); *United States v. Wuagneux*, 683 F.2d 1343 911th Cir. 1982). A warrant to search a specific area for a certain class of things authorizes government agents to break open locked containers which may contain the objects of the search. *United States v. Jackson*, 120 F.3d 1226 (11th Cir. 1997). Thus, if the police are searching for cocaine, and inside a box they locate weapons, the seizure of the weapons is permissible. *Id.* In *United States v. Smith*, 459 F.3d 1276 (11th Cir. 2006), the police had a search warrant authorizing them to search for drugs at the defendant's premises. During their search, the police saw pornographic pictures in a locked box. Seizing those were permitted under the "plain view" exception.

The warrant provided authority to search the premises located at 1841 Rodman Street, Hollywood, Broward County, Florida for the following items:

> Cocaine and Marijuana, all books and papers tending to show use, ownership, and/or control of said curtilage; all records including electronic devices pertaining to the illegal sale and distribution of controlled substances, and all paraphernalia used in weighing, packaging and concealment of controlled substances, as well as monies derived from the sale and distribution of controlled substances.

*See* Search Warrant Attached to Defendant's Motion (DE 40, Exh. 2). The firearm and ammunition as well as the identification card and piece of mail were lawfully seized. Although firearms and ammunition were not specifically sought in the search warrant, they were found in the course of a permissible search. *Id.*

5.      As discussed in sections A and B2, above, the evidence should not be dismissed due to stale, unreliable and insufficient evidence of probable cause.

6 & 7.  As discussed in section B4, above, the search warrant was sufficiently particular.

8 & 9.  The evidence should not be suppressed because the officers executing the warrant exceeded the scope of the warrant, failed to properly and timely file an inventory and return with the Court, and omitted one item from the inventory.

As discussed in section B4, above, the evidence should not be suppressed for exceeding the scope of the warrant.

Unless a clear constitutional violation occurs, noncompliance with FED.R.CRIM.PRO. Rule 41 requires suppression of evidence resulting from a search warrant only where (1) there was "prejudice" in sense that the search might not have occurred or would not have been so abrasive if the rule had been followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule.  *United States v. Gerber*, 994 F.2d 1556, 1560 (11th Cir. 1993); *United States v. Lloyd*, 721 F.2d 331, 333 (11th Cir. 1983); *United States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir. 1981).

There are two categories of Rule 41 violations: those involving constitutional violations and all others. *See*, *Gerber supra*; *United States v. Simons*, 206 F.3d 392, 402 (4th Cir. 2000); *United States v. Chaar*, 137 F.3d 359, 362 (6th Cir. 1998).  The procedural requirements of Rule 41(f)(1)(B) (i.e., completion of inventory) are ministerial in nature and thus, a technical failure does not render the search unreasonable under the Fourth Amendment.  *See*, *Simons* at 403-404 (failure to leave copy of warrant and receipt not a basis for suppression of evidence); *United States v. Hall*, 505 F.2d 961, 963 (3rd Cir. 1974)(failure to make a prompt return not a basis for suppression of evidence); *United States v. Marx*, 635 F.2d 436, 441 (Fifth Cir. Unit B 1981)(failure to deliver copy of search warrant to party whose premises were searched did not invalidate search).  *See also*, *United States v. Williams*, 439 F.3d 1125 (9th Cir. 2006); *United States v. Blazevich*, 38 Fed Appx 359 (9th Cir. 2002);

*United States v. Cafero*, 473 F.2d 489, 499 (3rd Cir. 1973); *United States v. McKenzie*, 446 F.2d 949,954 (6th Cir. 1971); *United States v. Ogden*, 2008WL2247074 (W.D. Tenn. May 28, 2008); *United States v. Sampson*, 2008WL919528 (M.D. Pa. March 31, 2008).

In the instant case, one of the co-affiants to the affidavit and application for Search Warrant filed a return with the Clerk of Courts for the 17th Judicial Circuit in and for Broward County, Florida on May 15, 2008, one day after the search warrant was executed. Further, as indicated on the receipt, the original Search Warrant, Affidavit and Inventory were all part of the return.

That the inventory does not include Defendant's Department of Corrections Identification Card is not grounds for suppression of introduction of the same. The exclusion of the item from the inventory list was inadvertent and, in fact, the item was listed as a seized item of evidence on the Property Form. *See Hollywood Police Department Property Form, GX 5.* Further, there is no prejudice to Defendant. Defendant was made aware of the seizure of the identification card, copies were provided to him in discovery. There was no constitutional violation, no intentional violation, and no prejudice. The evidence should not be suppressed.

10.    The evidence should not be suppressed since the officers knocked and announced their entry prior to entering the premises.

Although a search may violate the knock and announce rule, and thus the Fourth Amendment, the exclusionary rule does not apply. *Hudson v. Michigan*, 547 U.S. 586 (2006). The *Hudson* Court concluded that the policy considerations that supported the exclusionary rule in the context of other Fourth Amendment violations did not apply in cases where police failed to honor the knock and announce requirement. *Id.* at 591-94 ("What the knock-and-announce rule has never protected, however, is one's interest in preventing the government from seeing or taking evidence described in

17

a warrant. Since the interests that were violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable" *at* 594.).

In *United States v. Banks*, 540 US 31 (2003) ( finding that 15-20 seconds was reasonable), the Supreme Court stressed that "reasonableness" is the proper yardstick to measure the length of time that the officers must wait before breaking down the door.  When the police are search for a stolen piano, they should wait more time than when searching for easily disposable items, such as drugs.  Id. at 41.  In *United States v. Bennett*, 368 F.3d 1343 (11th Cir. 2004), the police knocked on the defendant's door and immediately saw movement within, but noone answered.  Breaking down the door was appropriate, in light of the fact that this was a drug search and "'guns and violence go hand-in-hand with illegal drug operations.'" *Bennett* at 1349, *citing United States v. Hromada*, 49 F.3d 685, 689 (11th Cir.1995).

In the instant case, the credible evidence at the hearing established that the officers did knock and announce before entering.  They had legitimate concerns about safety and disposal of evidence that prompted their entry after their knock and announce went unanswered.  There was no violation.

> 11.   As discussed in section A, above, the evidence should not be suppressed because the affidavit failed to advise the state judge of the informant's criminal history and history of drug abuse.

In addition, the Defendant challenges the fact that the informant's fee arrangement was not disclosed in the affidavit, and that the fee arrangement violated due process.  (DE 62).  The failure to disclose the fee arrangement should not result in suppression of the evidence, for the reasons discussed in section A, above.

In *United States v. Shearer*, 794 F.2d 1545 (11th Cir. 1986), the Eleventh Circuit held that

a contingent fee basis for paying an informant is inappropriate "only when the Government preselects the individual who is to be the target of the informant's investigation." *Id*. at 1549. See, *United States v. Richardson*, 764 F.2d 1514, 1520 (11th Cir.), *cert. denied*, 106 S.Ct. 320 (1985); *United States v. Carcaise*, 763 F.2d 1328, 1332 n. 11 (11th Cir. 1985).  In *Shearer*, the payment to the informant was appropriate because law enforcement "had no hand in selecting [the defendant] as the focus of [the informant's] investigation." *Id*. at 1549. The informant was paid $6,000 for his expenses during the investigation, $25,000 within two weeks before the trial for information and assistance he provided, and was eligible to receive 25% of any money obtained from a forfeiture of property in connection with the investigation. The controlling agent testified that he told the informant that the informant could be compensated for information on a case-by-case basis, depending on the class of violation investigated, whether arrests and convictions resulted, and the value of assets seized. *Id*. at 1548. Finding that the $31,000 paid to the informant before the trial was not contingent upon a conviction, the Eleventh Circuit found the arrangement to be permissible. The informant participated in a "full-time participation in a five month undercover investigation..." *Id*. at 1549.

Law enforcement may "pay for services of a confidential informant, even on a case-by-case basis. Financial arrangements with informants normally will not violate the law if the government agents themselves do not select person against whom the informant will direct his or her efforts and do not make informant's payment contingent upon the conviction of a particular person [emphasis added]."  *United States v. Richardson*, 764 F.2d 1514, 1520 (11th Cir. 1985), citing *United States v. Walker*, 720 F.2d 1527, 1539 (11th Cir. 1983).

In this instant matter, like the informant in *Shearer*, the Confidential Informant approached

19

the detectives with the information about Defendant Robinson and Shaun McKinley. Unlike *Shearer*, however, the Confidential Informant had no involvement in the investigation after providing a tip about the narcotics activity. Further, the Confidential Informant was paid following the arrests; thus, such payment, which was only a couple of hundred dollars, was not predicated upon prosecution(s), conviction(s), or forfeiture of assets.  Paying the informant on this basis was not inappropriate and was not a violation of due process.

**C.    Defendant's Motion to Suppress All Evidence and Fruits Derived from Illegally Intercepted Jail Telephone Calls (DE 39)**

Defendant seeks to suppress his May 14, 2008, recorded call from the Broward County Jail to housemate Gerald Viskocil as being a violation of the Fourth Amendment.

Title 18, United States Code, Section 2511 *et seq.* (hereinafter "Title III") prohibits using any electronic, mechanical, or other device to intentionally intercept any wire communication unless a court order is obtained or another statutory exception applies.  Title 18, United States Code, Section 2511 *et seq*.  Once such exception is for a law enforcement agency acting in the ordinary course of his duties.  18 U.S.C. § 2510(5)(a)(ii).  A second is for consent.  18 U.S.C. § 2511(2)(c).  Either exception provides an independent basis for interceptions.  *United States v. Moore*, 452 F.3d 382, 386-87 (5th Cir. 2006).

In *United States v. Noriega*, 764 F.Supp. 1480 (S.D.  Fla. 1991), the court upheld the interception of an inmate's telephone conversations, recognizing two applicable exceptions to Title III intercepted conversations (law enforcement duties and consent).  "In the absence of any suggestion or evidence [that interception of an inmate's telephone conversations was unrelated to institutional considerations], the court must presume that recording of inmate calls was pursuant to

20

routine prison policy applicable to all inmates" when applying the exception to Title III permitting interception by investigative or law enforcement officer in ordinary course of duties. *Id.* at 1491.

Prison officials are "investigative or law enforcement officers" and that monitoring and recording of calls pursuant to an established and posted prison policy is in the officers' "ordinary course of duty." *See*, *United States v. Friedman*, 300 F.3d 111, 121-22 (2nd Cir. 2002) (finding law enforcement exception applies to call routinely intercepted from county jail, but not deciding whether exception requires notice to prisoner); *United States v. Sababu*, 891 F.2d 1308, 1328-29 (7th Cir. 1989); *United States v. Feekes*, 879 F.2d 1562, 1565-66 (7th Cir. 1989); *United States v. Paul*, 614 F.2d 115, 117 (6th Cir.), *cert. denied*, 446 U.S. 941 (1980); *United States v. Vasta*, 649 F.Supp. 974, 989 (S.D.N.Y. 1986); *United States v. Clark*, 651 F.Supp. 76 (M.D. Pa. 1986); *Crooker v. United States Department of Justice*, 497 F.Supp. 500, 503 (D. Conn. 1980). Prison officials qualify as "investigative or law enforcement officer," such that inmate calls intercepted by prison personnel need not be judicially authorized pursuant to the law enforcement exception within Title III. *United States v. Rivera*, 292 F.Supp.2d 838 (E.D. Va. 2003).

While inmates retain a right to have a reasonable access to and use of telephones, their access is subject to rational limitations for legitimate security reasons. *Pope v. Hightower*, 101 F.3d 1382 (11th Cir. 1996). Judicially unauthorized monitoring and recording of an inmate's telephone calls is not prohibited where performed in the ordinary course of the prison officials' duties. *United States v. Paul*, 614 F.2d 115 (6th Cir. 1980); *Crooker v. United States Department of Justice*, 497 F.Supp. 500 (D. Conn. 1980).

A second exception to Title III allows interception where "one of the parties to the communications has given prior consent to such interception." Title 18, United States Code, Section

2511(2)(c). *See also*, *United States v. Hammond*, 286 F.3d 1189 (4th Cir. 2002) (defendant consented to interception of his conversations because he was notified of recording and nonetheless used the telephone). Implied consent may be deemed where there is a sign near the telephone advising inmates of monitoring. *See*, *United States v. Workman*, 80 F.3d 688 (2nd Cir. 1996); *United States v. Van Poyck*, 77 F.3d 285 (9th Cir. 1996); *United States v. Horr*, 963 F.2d 1124, 1126 (8th Cir. 1992) (finding that defendant implicitly consented to monitoring by using the telephone after receiving notice of monitoring); *United States v. Feekes*, 879 F.2d 1565 (7th Cir. 1989); *United States v. Willoughby*, 860 F.2d 15, 19-20 (2nd Cir. 1988); *United States v. Amen*, 831 F.2d 373, 378 (2nd Cir. 1987).

In *United States v. Rivera*, 292 F.Supp.2d 838 (E.D. Va. 2003), the county facilities where defendant was housed routinely record all telephone conversations of every prisoner (except conversations with inmates' lawyers), and each inmate, before making a telephone call must enter an assigned identification number. *Id.* at 839. Further, as to one of the county facilities where defendant was housed (Arlington County Detention Center), there is a sign posted next to the phone banks, alerting the inmate that all calls may be recorded and/or monitored. And, each inmate, after dialing his identification number hears a voice prompt informing him that the call will be recorded and monitored. *Id.* at 840. As to the second of the facilities in Rivera (Fairfax County Detention Center), each inmate heard the voice prompt alert that the call was being recorded, and each inmate was provided with a handbook setting forth the facility's rules which includes a section alerting inmates that their telephone calls may be monitored and/or recorded. *Id.* at 840. The District Court in *Rivera* found that both county jail facilities' interceptions of the defendant's telephone conversations fell within both the law enforcement and consent exceptions to Title III. *Id.* at 842.

22

*See also*, *United States v. Hammond*, 286 F.3d 189 (4th Cir. 2002) (Bureau of Prisons was acting in the ordinary course of its duties by routinely monitoring inmate calls); *United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989) (the "ordinary course" requirement was "'clearly satisfied' where the recordings were authorized by prison regulations and were made in accordance with established prison routine").

Similarly, Florida Statute Section 934.03 provides an exemption for recording of jail calls by prison officials done so in the course of regular operations.  Consistent with the federal position and exemption under Title III,  the Florida First District Court of Appeal held "societal interest in maintaining custody over prisoners significantly outweighs individual prisoner's interest in privacy of his telephonic communications; thus, there is exception to statute governing interception of wire and oral communication permitting prison officials to wiretap telephone calls from prisoners incarcerated in prison." *Pires v. Wainwright*, 419 So.2d 358 (Fla. 1st DCA 1982), *referring to United States v. Paul*, 614 F.2d 115 (6th Cir. 1980).  In *Pires*, the court found that although department of corrections did not post notice of intent to wiretap prisoner's telephone conversations - as there was in <u>Paul</u>, *supra* - legislature has clearly set forth policy placing inmates in custody under control of department of corrections, and, surveillance of prisoners by wiretapping prisoners' telephone conversations is within scope of department's duty to maintain secure correctional facility.  *Pires,* at 360.  In *United States v. Hearst*, 563 F.2d 1331, 1345 (9th Cir. 1977), the court stated "An intrusion by jail officials pursuant to a rule or policy with a justified purpose of imprisonment or prison security is not violative of the Fourth Amendment."   Relying on *Hearst*, the *Pires* court held that the Florida Legislature has clearly set forth a policy placing inmates in the custody and under the control of the Department of Corrections.

A prison's practice of recording inmate telephone calls does not violate the Fourth Amendment. The Fourth Amendment protects only those areas in which there is a legitimate expectation of privacy. *Smith v. Maryland*, 442 U.S. 735 (1979); *Katz v. United States*, 389 U.S. 347, 360 (1967). Numerous courts presented with this precise issue have held as a matter of law that there is no reasonable expectation of privacy in outgoing telephone calls from a prison, even if there is no actual notice that the calls will be intercepted. *United States v. Van Poyck*, 77 F.3d 285, 290-91 (9th Cir. 1996). *See United States v. Amen*, 831 F.2d 373, 379-80 (2nd Cir. 1987); *United States v. Sababu*, 891 F.2d 1308, 1329-30 (7th Cir. 1989); *United States v. Paul*, 614 F.2d 115, 116 (6th Cir. 1980); *United States v. Gangi*, 57 Fed. Appx. 809, 815 (10th Cir. 2003).

In *United States v. Noriega*, 764 F.Supp. 1480, 1492 (S.D. Fla. 1991) the court found with certainty that the defendant had no reasonable expectation of privacy in his conversations because the notices and consent form he signed explicitly stated that his calls were subject to monitoring and recording. *See also United States v. Valencia*, 711 F.Supp. 608 (S.D. Fla. 1989).

In *United States v. Valencia*, 711 F.Supp. 608 (S.D. Fla. 1989), the District Court denied defendants' joint omnibus motion challenging and seeking to suppress recorded jail telephone calls raising Title III and Fourth Amendment concerns. In *Valencia*, the defendants were housed at Metropolitan Correctional Center-Miami and were requested to and did sign consent and waiver forms for telephone use. *Id.* at 609. In the correctional center, inmates are provided with two types of telephones. The first are private phones for inmates to speak with their attorneys; and the second are phones for general use. There are multiple lines which are randomly monitored by facility officials. All calls are recorded and tapes are maintained for a 180 day period unless there is a governmental request to hold the tapes longer. *Id.* at 609-10. The district court in *Valencia* found that

24

neither Title III nor the Fourth Amendment were violated.  *Id.* at 611-612.

The same rationale applies to this Defendant in this matter.  Defendant cannot claim an expectation of privacy in calls he voluntarily places from a jail phone in an area in which there is a notice posted that the call is subject to recording and monitoring.  "The Fourth Amendment is simply inapplicable to these conversations."  *Noriega* at 1492.

Defendant's calls from the Broward County Jail were legally intercepted and recorded under stated exceptions to federal and state wiretapping laws.  The interception of calls was legally permissible as they were intercepted and recorded for legitimate law enforcement purposes, and all outgoing telephone calls made by inmates - with the exception of those privileged as attorney/client calls - were recorded in the course of ordinary business of the Broward Sheriff's Office Department of Detention for security, to protect the integrity of the jail rules and to prevent the commission of state and federal laws.  Moreover, Defendant consented to the telephone calls' being recorded through implication by express written notice posted at the phone that any calls placed from the telephone would be recorded.  Finally, Defendant has no Fourth Amendment violation claim, as there is no expectation of privacy in these recorded telephone calls.

## D.      Defendant's Motion in Limine to Exclude Jail Telephone Conversation and Transcript (DE 37)

Defendant seeks to exclude the contents of the jailhouse telephone call Defendant made, alleging that the call and transcript are immaterial, irrelevant, prejudicial, misleading and confusing.

Pursuant to FED.R.EVID. 402, all relevant is generally admissible.  Rule 403 provides for the exclusion of relevant evidence, among other reasons, if is probative value is "substantially outweighed" by unfair prejudice.  It is an extraordinary remedy, whose major function is limited to

"excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant*, 256 F.3d 1146, 1155 (11th Cir. 2001) (internal citations and quotations omitted). Exclusion of otherwise admissible evidence is an extraordinary remedy which the district court should invoke sparingly. *United States v. Finestone*, 816 F.2d 583, 585 (11th Cir. 1987). To hold otherwise would otherwise allow the court to exclude admittedly probative evidence. *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994); *United States v. Elkins*, 885 F.2d 775 (11th Cir. 1989) (On appeal, the court should look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact.). The term "unfair prejudice" relates to the capacity of some concededly relevant evidence to "lure the factfinder into declaring guilty on a ground different from proof specific to the offense charged.... 'unfair prejudice' means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172 (1997).

Evidence must be much more than simply prejudicial in order to justify the extreme measure of exclusion. *United States v. Terzado-Madruga*, 897 F.2d 1099 (11th Cir. 1990).

Under the provisions of Rule 402, Federal Rules of Evidence, relevant evidence is generally admissible, except where such evidence would be excludable under a separate legal provision. Evidence is relevant if it has some probative value on the issues of a case. *United States v. Larranaga*, 787 F.2d 489 (10th Cir. 1986). Where evidence has any probative value, the court should favor admission of the evidence. *United States v. Carranco,* 551 F.2d 1197 (10th Cir. 1977).

The party seeking to introduce a sound recording into evidence at trial has the burden of producing foundation evidence demonstrating that "the recording as played is an accurate reproduction of relevant sounds audited by a witness." *United States v. Biggins*, 551 F.2d 64, 66 (5th

26

Cir. 1977).  To establish the foundation the moving party must show: (1) the competency of the operator of the recording equipment; (2) the fidelity of the recording equipment; (3) the absence of material deletions, additions, or alterations in the relevant portions of the recording; and (4) the identity of the relevant speakers.  *Biggins*, at 66; *United States v. Lively*, 803 F.2d 1124, 1129 (11th Cir. 1986); *Patterson v. United States*, 444 U.S. 964 (1979).  The trial court has broad discretion in admitting tape recordings and the appeals court is "extremely reluctant" to disturb the trial court's decision.  *Biggins*, 551 F.2d at 67. The issue is whether a prima facie showing has been made that the tapes were what the government said they were. *United States v. Scully*, 546 F.2d 255, 269 (9th Cir. 1976); *United States v. Shabazz*, 724 F.2d 1536, 1539 (11th Cir. 1984).

Despite any portions of the brief telephone call which were inaudible or unintelligible  to the individual preparing the transcript, the tape is still admissible unless the inaudible portion is so substantial that it renders the recording as a whole untrustworthy.  *Lively*, 803 F.2d 1124; *United States v. Pope*, 132 F.3d 684 (11th Cir. 1998).

If there is a dispute as to the transcript, each side should produce its version and/or each side may introduce evidence supporting the accuracy of its version or challenging the accuracy of the other side's version.  The jury must reconcile the accuracy; therefore, the district court need not listen to the tape or decide whether a transcript is accurate before it is given to the jury and the recording played. *United States v. Hogan*, 986 F.2d 1364, 1376 (11th Cir. 1993).  *See also, United States v. Onori*, 535 F.2d 938, 948 (5th Cir. 1976).

Where a defendant does not submit alternative transcript, he may challenge the accuracy of the government's version through cross examination, but the court may still offer the transcript to the jury with the admonition that the tape is the primary evidence.  *United States v. Garcia*, 854  F.2d

1280 (11th Cir. 1988).

Transcripts are evidence admissible to assist jury in identifying speakers and absent anything more than a generalized claim of prejudice the appellate court will not find error in transcripts being allowed in jury room.  *United States v. Nixon*, 918 F.2d 895 (11th Cir. 1990).

The recorded call comprises relevant evidence and direct admissions of Defendant. Defendant has answered Gerald Viskocil's question of whether he had a firearm in the affirmative, thus constituting an admission.  Further, Gerald Viskocil's response "you're an idiot," is indicative that Defendant possessed the firearm, not Gerald Viskocil.  Finally, Defendant's frustration that he is caught up in illegal activity but will try to stay out of jail is a relevant admission.

The recorded conversation of Defendant contains admissions which are most relevant in the prosecution for his possessing a firearm as a convicted felon.  Any prejudice comes from the general nature of the statements sought to be introduced - they are incriminating.  The recording is not inaudible, nor are the transcripts faulty or misleading.

**E.     Defendant's Motion for Early Jencks Disclosure (DE 38)**

Defendant seeks to require the Government to disclose its *Jencks* material early to ensure due process for beneficial use in the preparation of his defense and to avoid unnecessary delays in trial.

The Jencks Act, Title 18, United States Code, Section 3500 and Fed. R. Crim. P. 26.2 requires that after a witness (other than the defendant) testifies on direct examination, the court, on motion of a party who did not call the witness, shall order the attorney who called the witness to produce for examination and use of the moving party, any statement of the witness that is in the party's possession and that relates to the subject matter about which the witness has testified.  *United States v. Schier*, 438 F.3d 1104, 1112 (11th Cir. 2006).

The Government is not required to disclose any statement in its possession falling under *Jencks* until after the witness has testified on direct examination. *United States v. Calderon*, 127 F.3d 1314 (11th Cir. 1997). Until a particular witness has testified, that prospective witness's statement shall not be the subject of discovery. *United States v. Jordan*, 316 F.3d 1215 (11th Cir. 2003).

The facts of this case are relatively uncomplicated. The Defendant has made no showing that due process dictates early disclosure of Jencks material.

## RECOMMENDATIONS

For the reasons stated above, this Court makes the following RECOMMENDATIONS regarding the Defendant's motions:

(A) That the Defendant's Motion for Production of Confidential Informant's Name and File (DE 51) be DENIED.

(B) That the Defendant's Motion to Suppress Evidence Seized Pursuant to Search Warrant (DE 40) be DENIED.

(C) That the Defendant's Motion to Suppress All Evidence and Fruits Derived from Illegally Intercepted Jail Telephone Calls (DE 39) be DENIED.

(D) That the Defendant's Motion in Limine to Exclude Jail Telephone Conversation and Transcript (DE 37) be DENIED.

(E) That the Defendant's Motion for Early Jencks Disclosure (DE 38) be DENIED.

## NOTICE OF RIGHT TO OBJECT

A party shall serve and file written objections, if any, to this Report and Recommendation with the Honorable United States District Judge Kenneth A. Marra within ten (10) days after being

served with a copy.  *See* 28 U.S.C. § 636(b)(1)(C).  Failure to file timely objections may limit the

scope of appellate review of factual findings contained herein.  *See United States v. Warren*, 687 F.2d

347, 348 (11th Cir.1982), *cert. denied*, 460 U.S. 1087 (1983).

      **DONE** and **SUBMITTED** in Chambers at West Palm Beach in the Southern District of

Florida, this 19 day of December, 2008.

_____

JAMES M. HOPKINS
UNITED STATES MAGISTRATE JUDGE

Copies to:
Hon. Kenneth A. Marra
Counsel of record